```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

POWER CELL LLC d/b/a ZEUS
BATTERY PRODUCTS,

                Plaintiff,            Case No.  17 C 4382

    v.                                Judge Harry D. Leinenweber

SPINGS WINDOW FASHIONS, LLC,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Partial Motion to Dismiss Counts I, II, and III pursuant to FED. R. CIV. P. 12(b)(6) [ECF No. 5]. For the reasons stated herein, the Motion is denied.

### I.   BACKGROUND

The following facts derive from Plaintiff's Complaint and are, for purposes of this Motion, accepted as true with all inferences drawn in Plaintiff's favor. *See, Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2015).

This case concerns a product recall involving the parties' respective products. Power Cell LLC d/b/a/ Zeus Battery Products ("Zeus") sells a range of battery products, including the AA battery at issue in this suit (the "Subject Battery"). (Compl. ¶ 6, Ex. A to Dkt. 1.) Spring Window Fashions, LLC ("SWF") sells window shades and coverings in various retail

stores across the country. (*Id.* ¶ 7.) Starting in the fall of 2015, SWF ordered approximately one hundred thousand Subject Batteries from Zeus to power its motorized window shades (the "SWF Product"). (*Id.* ¶¶ 18-23.)

Beginning in June 2016, various customers began reporting problems with the SWF Product. (*Id.* ¶¶ 26-35.) The reports complained that the batteries and/or battery casing burst, caught fire, or melted the surrounding material (hereinafter the "Incidents"). (*Id.*) Zeus alleges these Incidents were caused by a design defect in the SWF Product; namely, that SWF's product design allowed for improper installation of the Subject Batteries, a condition known in the industry as reverse-polarity. (*Id.* ¶¶ 37-38.) Reverse-polarity greatly increases the risk of batteries overheating. (*Id.*) In light of this risk, manufacturers typically design products to be inoperable if the batteries are installed in the reverse-polarity position. (*Id.*) According to Zeus, SWF did not heed this known, industry-wide advice, resulting in a design flaw in the SWF Product—the reverse-polarity condition—that directly caused the Incidents. (*Id.*)

Due to the Incidents, SWF initiated a product recall (the "Recall") in conjunction with the Consumer Product Safety Commission. (*Id.* ¶ 48.) SWF recalled the SWF Products that were

sold with the Subject Batteries from December 14, 2015 to approximately November 11, 2016. (*Id.*) SWF published an Important Safety Notice and a Recall Alert regarding the Recall (the Recall Notices). (*Id.* ¶¶ 48-49, 53-54.)

The Recall Notices are at the heart of this suit. Zeus alleges that the Recall Notices are false and misleading because they blame the Incidents on Zeus's Subject Battery rather than the design flaw in SWF's Product. (*Id.* ¶¶ 50-53.) Zeus alleges that the ongoing publication of the Recall Notices (and the absence of a retraction) continue to harm and injure its reputation in the industry. (*Id.* ¶¶ 68-70.) Zeus brings a four-count Complaint for declaratory judgment related to: indemnification (Count I); violations of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA"), 815 ILCS 510/2 (Count II); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count III); and breach of contract (Count IV). SWF moves to dismiss the two statutory claims and the declaratory judgment claim (Counts I – III). The Court will address these three claims below, but out of turn.

## II. ANALYSIS

### A. Zeus States a Claim under Illinois's Uniform Deceptive Trade Practices Act

SWF argues that two things are fatal to Zeus's UDTPA claims: First, the alleged misrepresentations are either true or mere opinion and thus not actionable, and second, Zeus cannot allege a threat of future harm.

#### *1. Alleged Misrepresentations*

SWF argues that Zeus's UDTPA claim fails because the alleged misrepresentations are not false or misleading. The UDTPA states in pertinent part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person
>
> [. . .]
>
> > (8) disparages the goods, services, or business of another by false or misleading representation of fact.

815 ILCS 510/2(a)(8). In other words, the plaintiff must allege that the defendant published untrue or misleading statements that disparaged the plaintiff's quality of its goods or services. *Kole v. Village of Norridge,* 941 F. Supp. 2d 933, 963 (N.D. Ill. 2013). "The [UDTPA] does not provide a cause of action for damages, but it does permit private suits for injunctive relief and has generally been held to apply to situations where one competitor is harmed or may be harmed by

the unfair trade practices of another." *Greenberg v. United Airlines,* 563 N.E.2d 1031, 1036-37 (Ill. App. Ct. 1990) (citation omitted). Essentially, the statute codifies the common-law tort of commercial disparagement. *Republic Tobacco, L.P. v. N. Atl. Trading Co.,* 254 F. Supp. 2d 985, 997-98 (N.D. Ill. 2002).

The legal standard is not at issue here. Both parties agree that false or misleading statements are actionable and truthful or opinion statements are not. The question is in what camp do the Recall Notices fall.

Two types of false statements can violate the UDTPA: "(1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC,* 136 F. Supp. 3d 911, 918 (N.D. Ill. 2015) (quoting *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 820 (7th Cir. 1999)), *aff'd,* 870 F.3d 682 (7th Cir. 2017).

Zeus alleges that the statements in the Recall Notices are false and misleading because the subject batteries are safe and did not cause the incidents; rather, the poor design of SWF's product did. Specifically, Zeus alleges the following statements were false and/or misleading:

> We are writing to inform you about a safety concern regarding the Zeus brand AA lithium batteries. . . . There have been isolated instances with this brand of batteries overheating. Because our number one priority is customer safety, we have completely removed these batteries from our supply chain and have also issues a voluntary recall. . . . Based on this potential safety concern, we are instructing you to <u>immediately</u> remove and dispose of the original Zeus brand batteries.
>
> Hazard: The lithium batteries sold with certain motorized window blinds can overheat, leak or discharge, posing a fire or burn hazard. . . . Consumers should immediately remove the batteries from the window blinds.

(Important Safety Notice, Feb. 24, 2017, Dkt. 1-1; Recall Alert, Mar. 2017, Dkt. 1-1 (the "Recall Notices").) Taking all of Zeus's allegations as true, the Court assumes the SWF Product's reverse-polarity design caused the Incidents. Against that backdrop, the Court finds the allegations plausibly state a claim that the Recall Notices contain false and/or misleading statements by implying that the batteries caused the Incidents and/or constitute a safety hazard. Although SWF points to the absence of a blatant falsehood in the Recall Notices, a statement may constitute a "misleading representation of fact" without containing an overt falsehood. *See,* 815 ILCS 510/2; *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 191 (N.D. Ill. 1987) ("[Actionable] statements . . . need not actually have been false, but only misleading."). The Recall Notices plausibly create the impression that the Subject Batteries are

defective and may overheat or explode with an attendant and serious risk of fire. Although the Recall Notices do not directly state the cause of the malfunction, a lay reader could reasonably conclude that the Subject Batteries caused the Incidents. *See, id.; see also Aliano v. WhistlePig, LLC*, No. 14 C 10148, 2015 WL 2399354, at *7 (N.D. Ill. May 18, 2015) (denying dismissal where parties disputed whether statements were misleading in context).

The case SWF relies on, *QVC, Inc. v. MJC America, Ltd.,* is distinguishable. No. 08 CV 3830, 2011 U.S. Dist. LEXIS 78063, at *1-2 (E.D. Pa. July 18), *reconsideration granted in part on other grounds,* No. 08 CV 3830, 2011 U.S. Dist. LEXIS 95640 (E.D. Pa. Aug. 24, 2011). In *QVC,* a distributor brought a claim for commercial disparagement against a retailer. The retailer had issued a voluntary recall of the distributor's space heaters after several reports of the space heaters emitting smoke, overheating, and/or catching fire. *Id.* at *2. The district court granted the retailer's motion for summary judgment on the commercial disparagement claim, finding that the distributor failed to establish that the statements in the recall notices were false. *Id.* at *16-18. First, *QVC* involves a common law commercial disparagement, not UDTPA, claim. Second, there were no allegations in *QVC* that the recall notices blamed the product

malfunctions on the wrong company or product, as here. As such, the *QVC* court found that the recall notices could not be construed as false when read as a whole. *Id.* at *16. Here, the opposite is true. When the Recall Notices are read in context, they plausibly could create the impression that the recall was caused by the Subject Batteries.

*World Kitchen* is analogous. In *World Kitchen, LLC v. America Ceramic Soc.,* No. 12 CV 8626, 2013 WL 5346424 (N.D. Ill. Sept. 19, 2013), the plaintiff alleged trade disparagement based on the allegedly false and misleading publication of an article titled "Shattering Glass Cookware" that stated that Pyrex is more likely to shatter than other glassware during regular kitchen use. *Id.* at *1-2. The district court denied defendants' motion to dismiss, emphasizing that the plaintiff alleged false and misleading statements *of fact* about Pyrex's tendency to shatter which was sufficient to pass muster at the pleading stage. *Id.* at *10-11. Here, Zeus similarly alleged that the Recall Notices contain false and misleading statements of fact regarding the cause of the Incidents. (Compl. ¶¶ 50, 53, 63-65, 67, 73.) Given the motion-to-dismiss standard and *World Kitchen,* the Complaint supports a reasonable inference that the Recall Notices were false and/or misleading by causing a reasonable consumer to think that Zeus's Subject Batteries were

responsible for the Incidents, rather than SWF's alleged design flaw. *See, id.; World Kitchen,* 2013 WL 5346424, at *4-5. At this stage, the pleading is sufficient.

### *2. Future Harm*

Next, SWF argues that Zeus still fails to state a claim under the UDTPA because it failed to allege a threat of future harm. "To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.,* 909 N.E.2d 848, 857 (Ill. App. 1st Dist. 2009).

SWF relies on a line of cases that stand for the proposition that when a consumer is already aware of the misleading nature of an advertisement or a defect in a product, the consumer can avoid all future harm by refusing to purchase the product again. *See, e.g., Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013) ("[Consumer plaintiff] has already made her purchase and is aware of the alleged defect in the Hair Treatment that poses a risk of hair loss. Armed with that knowledge, she can avoid using the Hair Treatment in the future."). However, the same logic does not apply here. Zeus cannot avoid the continuing harm to its reputation by refusing to do business with SWF. *See, Unichem Corp. v. Gurtler,* 498

N.E.2d 724, 730 (Ill. App. Ct. 1986) (noting distinction between consumer action versus competitor action and finding that "unlike the customers in [consumer actions]," plaintiff "has suffered and will suffer future economic injury" unless defendant is enjoined); *accord, Brennan v. AT & T Corp.,* No. 04 CV 433, 2006 WL 306755, at *5 (S.D. Ill. Feb. 8, 2006) (denying dismissal of UDTPA claim where plaintiff could not avoid future harm even with knowledge of the problem). Zeus alleged: "Without a full retraction of the foregoing false, misleading and otherwise disparaging statements, Zeus will continue to suffer damage to its brand and lose business and profits as long as its products and name are tarnished." (Compl. ¶ 69.) At the pleading stage, this is sufficient. *Cf. Am. Hosp. Supply Corp. v. Hosp. Prod. Ltd.,* 780 F.2d 589, 595 (7th Cir. 1986) (noting that a mailed statement may continue to impair goodwill unless retracted); *Logan Graphic Prod., Inc. v. Textus USA, Inc.,* No. 02 C 1823, 2002 WL 31507174, at *5 (N.D. Ill. Nov. 8, 2002) (finding a valid UDTPA claim in action between competitors where defendant made statements to retailers and distributers that plaintiff's products were "knock-offs" and inferior in production and operation).

None of the authority cited by SWF leads to a different result. Consumer actions are not analogous to the case at bar

for the reasons discussed above. *See, Kljajich v. Whirlpool Corp.,* No. 15 C 5980, 2015 U.S. Dist. LEXIS 165885 (N.D. Ill. Dec. 10, 2015) (consumer suit); *Lake v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893 (N.D. Ill. 2013) (same); *Robinson v. Toyota Motor Credit Corp.,* 735 N.E.2d 724 (Ill. App. Ct. 2000) (same), *rev'd in part, aff'd in part,* 775 N.E.2d 951266 (Ill. 2002); *Smith v. Prime Cable,* 658 N.E.2d 1325 (Ill. App. Ct. 1995) (same); *Greenberg v. United Airlines,* 563 N.E.2d 1031 (Ill. App. Ct. 1990) (same). The other two cases cited by SWF—*Tarin* and *American Pet Models*—concern whether the plaintiff demonstrated sufficient evidence of future harm, not whether the plaintiff adequately *pled* as much. *See, Tarin v. Pellonari,* 625 N.E.2d 739, 747 (Ill. App. Ct. 1993) (appeal after bench trial); *Am. Pet Motels, Inc. v. Chicago Veterinary Med. Ass'n,* 435 N.E.2d 1297, 1302 (Ill. App. Ct. 1982) (appeal after summary judgment), *abrogated on other grounds by Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 619 N.E.2d 129 (Ill. 1993).

Zeus alleges the publication and continued validity of the Recall Notices to its customers and the public at large continue to cause damage. This is sufficient at the pleading stage. Accordingly, the Court denies SWF's Motion to Dismiss the UDTPA claim.

## B. Zeus States a Claim under the Illinois Consumer Fraud Act

SWF moves to dismiss Count III alleging that SWF violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"). First, SWF repeats its argument that Zeus only alleges true or mere opinion statements; this argument was rejected above and need not be addressed again. Next, SWF argues that Zeus fails to allege it relied on the misrepresentations. The Court now turns to this argument.

The Consumer Fraud Act prohibits, in relevant part, "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2. To plead a cause of action under the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.,* 771 F.3d 391, 402 (7th Cir. 2014) (quoting *De Bouse v. Bayer AG,* 922 N.E.2d 309, 313 (Ill. 2009)). SWF argues that Zeus fails to allege the second element—that Zeus relied on the misrepresentations—because alleging that *consumers* relied on the misrepresentations is insufficient.

SWF is incorrect. The elements required to establish fraud under the Consumer Fraud Act are less stringent than the elements necessary to establish common-law fraud. *Id.* Zeus is not required to allege it relied on SWF's misrepresentations; rather, Zeus must plead only that SWF intended consumers to rely on those misrepresentations. *See, Gold v. Golden G.T., LLC*, No. 05 C 288, 2005 WL 2465815, at *4 (N.D. Ill. Oct. 4, 2005) (collecting cases); *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987) (finding defendant's alleged misrepresentations "in the marketplace and to actual and/or prospective customers" sufficient to state a CFA claim). Zeus alleged: "SWF engaged in deceptive acts and practices . . . by making false and misleading representations of fact . . . to the public as a whole. SWF's actions were taken with the intent to disparage Zeus, its products and services . . . and to fool the public into believing that SWF's own products are safe." (Compl. ¶ 73.) Additionally, Zeus alleged that SWF directed the dissemination of the Recall Notices, which contained "false and misleading information," to "retailers and consumers." (*Id.* ¶ 54.) This is sufficient to state a claim. SWF's Motion to Dismiss Count III is denied.

### C. Declaratory Judgment (Count I)

Finally, SWF argues that declaratory judgment is inappropriate here because the conduct already occurred and compensatory damages are adequate. The Complaint requests a declaratory judgment declaring: (1) "the Subject Battery is a safe product and was not the cause of the incidents that led to the Recall," (2) "the SWF Product contains serious defects and poses an unreasonable risk of harm to consumers and that the warnings provided by SWF to consumers regarding the SWF Product are insufficient and inadequate," and (3) "SWF is not entitled to be defended and/or indemnified by Zeus in connection with any and all costs or expenses incurred in the Recall." (Compl. at 13.)

The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction" a federal court may "declare the rights and other legal relations" of a party. 28 U.S.C. § 2201. The "actual controversy" provision of the Declaratory Judgment Act incorporates the "case or controversy" requirement of Article III of the Constitution. U.S. Const. art. III, § 2, cl. 1. The Declaratory Judgment Act allows for the efficient resolution of disputes through an early adjudication of the rights of the parties. *Med. Assur. Co. v. Hellman,* 610 F.3d 371, 377 (7th Cir. 2010) (citations omitted).

"Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (*i.e.,* a suit for damages or an injunction) but has not done so; and (2) although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749 (7th Cir. 1987).

This suit falls among the former. Zeus requests a declaration that SWF is not entitled to indemnification for the costs of the Recall. The Complaint alleges an actual controversy in that SWF has demanded indemnification and Zeus refuses that demand. (Compl. ¶ 59.) Indeed, SWF seeks the converse ruling in its counterclaim for contractual indemnification. In doing so, SWF practically concedes the point. *Cf. Med. Assur. Co. v. Hellman,* 610 F.3d 371, 377 (7th Cir. 2010) (citing 10B Wright & Miller, Fed. Prac. & Proc. § 2751 (3d ed. 1998) ("The remedy made available by the Declaratory Judgment Act . . . relieves potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.")). Thus, an actual controversy exists between

the parties regarding indemnification, and resolution via declaratory judgment is appropriate.  SWF's Motion to Dismiss the declaratory judgment claim is denied.

However, Zeus requests several declarations in its prayer for relief to Count I that are inappropriate.  Specifically, it requests that this Court declare that "the Subject Battery is a safe product" and that "the SWF Product contains serious defects and poses an unreasonable risk of harm." (Compl. at 13.) Whether a product is generally "safe" is the prerogative of the U.S. Consumer Product Safety Commission.  This Court may determine the cause of the Incidents that led to the Recall if that factual determination is required to resolve the dispute between the parties, but it will not make general proclamations beyond what is required; the Court does not decide factual questions on a whim.  The declaratory judgment count stands, but Zeus cannot proceed on the safety-declaration theories just discussed.

## III. CONCLUSION

For the reasons stated herein, SWF's Partial Motion to Dismiss [ECF No. 5] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated:  4/23/2018